IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH REARICK** | : | No. |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| GRAHAM SPANIER, SUSAN J. | : | |
| WIEDEMER, AL HORVATH, | : | |
| JOSEPH DONCSECZ, JAMES MATTERN, | : | |
| and RICHARD KILLIAN | : | Jury Trial Demanded |
| Defendants | : | |

**Complaint**

**Introductory Statement**

1. This is a civil rights complaint filed by Deborah Rearick, an employee of the Pennsylvania State University. Plaintiff alleges, inter alia, violations of her First Amendment rights to petition for a redress of grievances. Plaintiff had a pending civil rights claim and later an appeal (pending in the United States District Court for the Middle District of Pennsylvania) and eventually in the Third Circuit Court of appeals, which were dismissed during and after the alleged violations took place. Plaintiff made every good faith effort to amend the pleadings at the trial court stage but was unsuccessful. See *Rearick v. The Pennsylvania State University* at Docket # 1:08-cv-01195-YK (MD Pa. 2008). She later had an appeal pending No. 10-3041(decided March 4, 2011) because the trial court not only denied requests for additional discovery but for the opportunity to amend the complaint. Between the filing of her original complaint on June 24, 2008 and the Third Circuit Court of Appeals decision on March 4, 2011 the plaintiff was unlawfully denied a number of promotional opportunities in retaliation for her suing the Pennsylvania State University by the above named defendants. Plaintiff alleges violations of her rights under the Petition Clause of the First Amendment. Plaintiff has filed a

Title VII action which is now pending before the EEOC. She is also filed a complaint alleging violations under the Pennsylvania Human Relations Act.

## Jurisdiction and Venue

2. Jurisdiction is conferred on this court by 28 USC §1331 and 28 USC §1343 (a) (3) & (4) and the remedial statute 42 USC §1983.

3. A jury trial is demanded.

4. Punitive damages are demanded because the defendants' misconduct was particularly egregious.

5. Venue is properly in the Middle District of Pennsylvania because all parties are residents of Centre County Pennsylvania and all evidence and witnesses are also common to Centre County. Centre County lies within the jurisdiction of the United States Court for the Middle District of Pennsylvania.

## Rights Violated

6. Plaintiff alleges unlawful retaliation by the state official defendants because she exercised her right to petition for a redress of grievances. She also alleges title VII violations but has not as yet procured a right to sue.

## Parties

7. Defendants Susan Wiedemer, Joseph Doncsecz, and Al Horvath, are, among other things, "Trustees" for the Pennsylvania State University. These defendants are members of an inside group of top level "front office" officials euphemistically described along with the President of the University as "Olde Maine" meaning, more specifically, the Office of the President of the University, Graham Spanier.

8. Defendant Graham Spanier is commonly known, referred to, or described as "Olde Maine" himself. He is also referred to in this manner as the "front office". He is President of the Pennsylvania State University (PSU).

9. James Mattern is the Director of Research Accounting for PSU.

Richard Killian was at times complained of herein Deborah Rearick's immediate superior.

## Operative Facts

10. On or about 2009 the plaintiff Deborah Rearick had a federal complaint pending in the United States District Court for the Middle District of Pennsylvania. It was dismissed by the Hon. Yvette Kane, Federal District Court Judge on June 17, 2010.

11. The defendant in that matter was the Pennsylvania State University.

12. On or about January and February of 2009 Deborah Rearick had been performing in a position as an Accountant I at PSU.

13. She was working and performing extremely well in the position which she had assumed on or about January 13, 2009. Deborah was told by Richard Killian, her supervisor, that she had "done the work in the past" that "there was no need for training" and that she had performed extremely well.

14. The position was open because the person who had filled it before was being promoted to perform as an Accountant II.

15. The position (had Deborah Rearick been paid in grade) was roughly an 8% increase over her salary at that time.

16. The position in which Deborah Rearick was working, as aforementioned, as an Accountant I, was formally posted on February 5, 2009.

17. The plaintiff Deborah Rearick bid on the position because it was an upgrade and because she had a clear inside track for the appointment.

18. Deborah Rearick was further encouraged (because of her excellent proficiency) to bid on the position by Bonnie Griffin. Griffin later served on her interview committee.

19. On February 19, 2009 February Deborah received an e-mail from Richard Killian to be in his and Bonnie Griffin's office on Wednesday, February 25, 2009 for an interview.

20. On February 23 Richard Killian e-mailed Deborah Rearick that she would be interviewed by Richard Killian, Connie Stover, and Bonnie Griffin.

21. After completing the interview (later that same day) Connie Stover and Bonnie Griffin told Deborah Rearick that she had done very well.

22. On April 2, 2009 Richard Killian asked to see Deborah at 1:15 PM. She was to meet with Bonnie Griffin and him. At that meeting Killian told plaintiff that they had chosen Tracy Gayan for the position. Bonnie Griffin was very upset and left for the day at that time.

23. Deborah Rearick was also extremely upset.

24. On April 3, 2009 Richard Killian told Deborah Rearick that he and Bonnie Griffith had not made the decision not to hire her. Normally this would have been their responsibility.

25. Killian told Deborah Rearick that "Olde Maine made the decision" Killian further said "Olde Maine has the power". Rearick took this to mean that the President, Graham Spanier, himself who runs a very hands-on administration had decided that she would not be turned down.

26. At Penn State "Olde Maine" is a euphemistic expression which refers to the head of the University i.e. it means Graham Spanier and the front office where no decision is handed down without his approval as President.

27. On April 8, 2009 James Mattern told Deborah Rearick that he had no part in the interview process but that Sue Wiedemer had said the process was to go-ahead despite his purported non-availability (upon information and belief his wife was quite ill).

28. James Mattern also told Deborah Rearick that Sue Wiedemer was in charge of the interview and the hiring process. Wiedemer would not act based upon Rearick's information and belief without the approval and direction of Graham Spanier particularly since the litigation referred to above was pending.

29. Upon the information, as alleged above, and belief, Graham Spanier and Sue Wiedemer, along with Al Horvath and Joseph Doncsecz made the decision that plaintiff would not be given the job in which Deborah Rearick had performed so well and for which she was the most qualified. Rearick alleges she was denied in retaliation for complaining and filing suit.

30. On or about May 6 2009 Richard Killian told Deborah that she had a "reoccurring pattern of questioning authority" in a context of explaining why she had been denied a fair opportunity at promotion. This was a retaliatory adverse employment act carried out by "Olde Maine" meaning the defendants Spanier, Al Schultz, Joseph Doncsecz and Susan Wiedemer.

31. On or about October 15, 2010 Deborah Rearick received a letter from Susan J Wiedemer

32. Wiedemer accused Deborah Rearick of disrupting her coworkers and soliciting them to assist in her legal endeavors. The case dismissed by the Hon. Yvette Kane United States District Court Judge was currently on appeal the United States Third Circuit Court of Appeals by this time having been dismissed on June 17, 2010.

33. The accusations made by the defendant Wiedemer were totally and completely false and baseless. When brought to her attention Deborah Rearick had merely indicated that

participants in the discussion into which she was drawn might think of going "outside the University" to resolve complaints. Quite frankly, Deborah Rearick's comments were well taken and based solidly upon her experiences. They were also protected speech

34. The case dismissed by the Hon. Yvette Kane was a sex discrimination case based upon 42 U.S.C. 2000 (e) et. seq.. Although raised in conferences with the trial judge and with opposing counsel Rearick was never permitted to amend her complaint. To avoid amendment she had sought the deposition of Graham Spanier but was never able to schedule it.

35. Judge Kane denied Deborah Rearick a request for more discovery and the opportunity to amend her complaint to add a First Amendment retaliatory violation. This new complaint is well within the applicable statute of limitations and alleges further actions of retaliation

36. On or about the summer of 2010 Deborah Rearick had entered the human resources office at PSU and ended up having a conversation with "Bobby Misher" a black man who worked for the University at that time.

37. Misher told Deborah Rearick that he had a significant amount of information but that he was precluded by orders from talking to her or providing her with information which Rearick took to include personal and human resources related information to which she had rightful access.

39. Misher also told Deborah Rearick that he knew of a significant amount of mistreatment to which she had been subjected by "PSU's lawyers" and "others in the administration. Misher no longer works for the University. He did not name names that time.

40. See Exhibit A attached hereto. Exhibit A is a copy of correspondence received by the plaintiff from the defendant Wiedemer on or about October 15, 2010. Wiedemer makes direct reference to plaintiff's legal actions.

41. Exhibit A is a copy of Ms. Wiedemer's letter to plaintiff and allegations in the form of a complaint made by the plaintiff against "Penn State University Respondent", before the Pennsylvania Human Relations Commission/EEOC as a result of the retaliation she suffered.

42. Plaintiffs PHRC/EEOC complaint contains three counts of allegations made against PSU and a factual summary, all of which are incorporated herein.

43. Plaintiff alleges, in addition to the retaliation that she suffered above, that during the pendency of her federal litigation that she was additionally retaliated against in the following particulars:

44. On May 10, 2010 plaintiff applied for "Assistant Supervisor of the Property Inventory Department" which had been posted on the PSU website on May 5, 2010.

45. Plaintiff had in excess of 20 years of work related experience for this position. In the meantime plaintiff was litigating her Title VII action against PSU more specifically arguing defendant's motion for summary judgment. The case was dismissed on June 17, 2010.

46. On June 3, 2010 Deborah learned that she had been denied the aforementioned position as Assistant Supervisor of the Property Inventory Department which was given to a mail (Earl Moore). Moore was far less qualified than Deborah Rearick

47. Plaintiff alleges she was denied the aforementioned positions (the Accountant I position in April 2009) and the aforementioned position she had applied for on May 10, 2010 in retaliation for her seeking a redress of grievances then pending against PSU. In addition plaintiff had complained to the PSU Affirmative Action Office about the "good old boy" culture at PSU. She also complained about the misconduct of some of the aforementioned defendants.

48. On July 26, 2010 plaintiff applied for the position of "Grants and Contracts Accountant I". Her Notice of Appeal to the Third Circuit Court of Appeals was filed on July 9, 2010.

49. On September 13, 2010 Deborah Rearick was notified by defendant James Mattern (Director of Research Accounting) that she was denied the position of Grants and Contracts Accountant I because she lacked a college degree. This was an inexcusable and unjustifiable denial of her rights done in retaliation for her seeking a redress of her grievances. This job had been posted on July 21, 2010

50. The adverse employment actions of April 2009, June 2010, and September 2010 were retaliatory actions by these defendants because Deborah Rearick had sued PSU and because she appealed Judge Kane's dismissal of her underlying Title VII claim.

51. Demonstrating the defendants' intentional vindictiveness and desire to retaliate against Rearick and injure her, despite the fact that Rearick's appeal, just one week previously, of Judge Kane's dismissal of her Title VII claims against the University, then pending in the Third Circuit Court of Appeals, Wiedemer referred to a 3+ year old June 25, 2007 e-mail (obviously kept in a file to be used at the first opportunity) in which Wendell Courtney Esquire, an attorney for PSU, had threatened plaintiff "not to harass other university employees in any manner". The plaintiff had harassed no one.

52. Wiedemer derogatorily referred to Rearick's pending Third Circuit appeal while conducting no investigation or specifying no alleged misconduct referred to in the letter which she then posted to Rearick's personnel file as a way to intimidate and injure her.

53. Despite Rearick's denial and requests to Wiedemer not to do so, Wiedemer, seeking to suppress Rearick's right to express herself and deter her from her right to discuss matters of public concern, persisted and placed a letter in Rearick's personnel file.

Wherefore plaintiff demands judgment of the defendants jointly and severally for the violation of her First Amendment rights, for pain and suffering, for embarrassment and

humiliation, with punitive damages, for emotional distress, together with fees, costs, attorney's fees, and such other relief as may be deemed appropriate.

                              Respectfully Submitted,

            By:        s/Don Bailey, Esquire
                        4311 N. 6th Street
                        Harrisburg, PA  17110
                        (717) 221-9500

April 4, 2011