**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBORAH REARICK** | : | **No.  4:11-CV-624** |
| **Plaintiff** | : | |
| | : | **A. Richard Caputo** |
| **VS.** | : | |
| | : | |
| **GRAHAM SPANIER, SUSAN  J.** | : | |
| **WIEDEMER, AL HORVATH,** | : | |
| **JOSEPH DONCSECZ, JAMES** | : | |
| **MATTERN, ROBERT MANEY, and** | : | |
| **RICHARD KILLIAN.** | : | **Jury Trial Demanded** |
| **Defendants** | : | |

**BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS THE AMENDED COMPLAINT**

**I.      PROCEDURAL HISTORY**

On or about 2009 the plaintiff Deborah Rearick had a federal complaint pending in the United States District Court for the Middle District of Pennsylvania. It was dismissed by the Hon. Yvette Kane, Federal District Court Judge on June 17, 2010. The defendant in that matter was the Pennsylvania State University. See Amended Complaint 10-11

On or about January and February of 2009 Deborah Rearick had been performing in a position as an Accountant I at PSU. She was working and performing extremely well in the position which she had assumed on or about January 13, 2009. Deborah was told by Richard Killian, her supervisor, that she had "done the work in the past" that "there was no need for training" and that she had performed extremely well. The position was open because the person who had filled it before was being promoted to perform as an Accountant II. The position (had Deborah Rearick been paid in grade) was roughly an

1

8% increase over her salary at that time. The position in which Deborah Rearick was working, as aforementioned, as an Accountant I, was formally posted on February 5, 2009. See Amended Complaint 12-16.

The plaintiff Deborah Rearick bid on the position because it was an upgrade and because she had a clear inside track for the appointment. Deborah Rearick was further encouraged (because of her excellent proficiency) to bid on the position by Bonnie Griffin. Griffin later served on her interview committee. On February 19, 2009 February Deborah received an e-mail from Richard Killian to be in his and Bonnie Griffin's office on Wednesday, February 25, 2009 for an interview. See Amended Complaint 17-19.

On February 23 Richard Killian e-mailed Deborah Rearick that she would be interviewed by Richard Killian, Connie Stover, and Bonnie Griffin. After completing the interview (later that same day) Connie Stover and Bonnie Griffin told Deborah Rearick that she had done very well. On April 2, 2009 Richard Killian asked to see Deborah at 1:15 PM. She was to meet with Bonnie Griffin and him. At that meeting Killian told plaintiff that they had chosen Tracy Gayan for the position. Bonnie Griffin was very upset and left for the day at that time. See Amended Complaint 20-22.

Deborah Rearick was also extremely upset.  On April 3, 2009 Richard Killian told Deborah Rearick that he and Bonnie Griffith had not made the decision not to hire her. Normally this would have been their responsibility. Killian told Deborah Rearick that "Old Main made the decision" Killian further said "Old Main has the power". Rearick took this to mean that the President, Graham Spanier himself, who runs a very hands-on administration, had decided that she would not be turned down. See Amended Complaint 23-25.

At Penn State "Old Main" is a euphemistic expression which refers to the head of the University i.e. it means Graham Spanier and the front office where no decision is handed down without his approval as President. On April 8, 2009 James Mattern told Deborah Rearick that he had no part in the interview process but that Sue Wiedemer had said the process was to go-ahead despite his purported non-availability (upon information and belief his wife was quite ill). See Amended Complaint 26-27.

James Mattern also told Deborah Rearick that Sue Wiedemer was in charge of the interview and the hiring process. Wiedemer would not act based upon Rearick's information and belief without the approval and direction of Graham Spanier particularly since the litigation referred to above was pending. Upon the information, as alleged above, and belief, Graham Spanier and Sue Wiedemer, along with Al Horvath and Joseph Doncsecz made the decision that plaintiff would not be given the job in which Deborah Rearick had performed so well and for which she was the most qualified. Rearick alleges she was denied in retaliation for complaining and filing suit. See Amended Complaint 28-29.

On or about May 6 2009 Richard Killian told Deborah that she had a "re-occurring pattern of questioning authority" in a context of explaining why she had been denied a fair opportunity at promotion. This was a retaliatory adverse employment act carried out by "Old Main" meaning the defendants Spanier, Al Schultz, Joseph Doncsecz and Susan Wiedemer. On or about October 15, 2010 Deborah Rearick received a letter from Susan J Wiedemer. Wiedemer accused Deborah Rearick of disrupting her coworkers and soliciting them to assist in her legal endeavors. The case dismissed by the Hon. Yvette Kane, United States District Court Judge, was currently on appeal the United

3

States Third Circuit Court of Appeals, by this time having been dismissed on June 17, 2010. See Amended Complaint 30-32

The accusations made by the defendant Wiedemer were totally and completely false and baseless. When brought to her attention Deborah Rearick had merely indicated that participants in the discussion into which she was drawn might think of going "outside the University" to resolve complaints. Quite frankly, Deborah Rearick's comments were well taken and based solidly upon her experiences. They were also protected speech. See Amended Complaint 33.

Judge Kane denied Deborah Rearick a request for more discovery and the opportunity to amend her complaint to add a First Amendment retaliatory violation. This new complaint is well within the applicable statute of limitations and alleges further actions of retaliation. On or about the summer of 2010 Deborah Rearick had entered the human resources office at PSU and ended up having a conversation with "Bobby Misher" a black man who worked for the University at that time. See Amended Complaint 35-36.

Misher told Deborah Rearick that he had a significant amount of information but that he was precluded by orders from talking to her or providing her with information which Rearick took to include personal and human resources related information to which she had rightful access. Misher also told Deborah Rearick that he knew of a significant amount of mistreatment to which she had been subjected by "PSU's lawyers" and "others in the administration. Misher no longer works for the University. He did not name names at that time. See Amended Complaint 38-39.

Ms. Wiedemer's letter to plaintiff and allegations in the form of a complaint made by the plaintiff against "Penn State University Respondent", before the Pennsylvania

Human Relations Commission/EEOC as a result of the retaliation she suffered. Plaintiffs PHRC/EEOC complaint contains three counts of allegations made against PSU and a factual summary, all of which are incorporated herein. Plaintiff alleges, in addition to the retaliation that she suffered above, that during the pendency of her federal litigation that she was additionally retaliated against in the following particulars: See Amended Complaint 41-43.

On May 10, 2010 plaintiff applied for "Assistant Supervisor of the Property Inventory Department" which had been posted on the PSU website on May 5, 2010. Plaintiff had in excess of 20 years of work related experience for this position. In the meantime plaintiff was litigating her Title VII action against PSU more specifically arguing defendant's motion for summary judgment. The case was dismissed on June 17, 2010. On June 3, 2010 Deborah learned that she had been denied the aforementioned position as Assistant Supervisor of the Property Inventory Department which was given to a male (Earl Moore). Moore was far less qualified than Deborah Rearick. See Amended Complaint 44-46.

Plaintiff alleges she was denied the aforementioned positions (the Accountant I position in April 2009) and the aforementioned position she had applied for on May 10, 2010 in retaliation for her seeking a redress of grievances then pending against PSU. In addition plaintiff had complained to the PSU Affirmative Action Office about the "good old boy" culture at PSU. She also complained about the misconduct of some of the aforementioned defendants. See Amended Complaint 47.

On July 26, 2010 plaintiff applied for the position of "Grants and Contracts Accountant I". Her Notice of Appeal to the Third Circuit Court of Appeals was filed on

July 9, 2010. On September 13, 2010 Deborah Rearick was notified by defendant James Mattern (Director of Research Accounting) that she was denied the position of Grants and Contracts Accountant I because she lacked a college degree. This was an inexcusable and unjustifiable denial of her rights done in retaliation for her seeking a redress of her grievances. This job had been posted on July 21, 2010. See Amended Complaint 48-49.

The adverse employment actions of April 2009, June 2010, and September 2010 were retaliatory actions by these defendants because Deborah Rearick had sued PSU and because she appealed Judge Kane's dismissal of her underlying Title VII claim. Demonstrating the defendants' intentional vindictiveness and desire to retaliate against Rearick and injure her, despite the fact that Rearick's appeal, just one week previously, of Judge Kane's dismissal of her Title VII claims against the University, then pending in the Third Circuit Court of Appeals, Wiedemer referred to a 3+ year old June 25, 2007 e-mail (obviously kept in a file to be used at the first opportunity) in which Wendell Courtney Esquire, an attorney for PSU, had threatened plaintiff "not to harass other university employees in any manner". The plaintiff had harassed no one. See Amended Complaint 50-51.

Wiedemer derogatorily referred to Rearick's pending Third Circuit appeal while conducting no investigation or specifying no alleged misconduct referred to in the letter which she then posted to Rearick's personnel file as a way to intimidate and injure her. Despite Rearick's denial and requests to Wiedemer not to do so, Wiedemer, seeking to suppress Rearick's right to express herself and deter her from her right to discuss matters of public concern, persisted and placed an adverse letter in Rearick's personnel file. On May 5, 2011 Deborah Rearick was ordered into a meeting with Robert Maney and Susan

6

Wiedemer in a conference room near her office. Upon entering the conference room where she had been ordered to report she was directed to immediately turn over all of her keys. See Amended Complaint 52-55.

When Rearick asked what was going on, she was refused any information by Maney and Wiedemer. When she indicated that she was going to leave because she was afraid of what was going on Maney told her that, if she left, that there "would be consequences" and directed her to stay. Deborah Rearick complied. Rearick was questioned about a gun permit (conceal and carry) that she has had for many many years, for protection due to business activities. See Amended Complaint 56-57.

During that time plaintiff has never violated Penn State's prohibition against firearms on campus and has never violated any state law or regulation. In a vitriolic reaction for filing the original complaint in this matter the defendants Wiedemer and Maney unlawfully retaliated against the plaintiff and sent her to their in-house (Penn State) mental counselor, Dr. Dennis Heitzman, for a sit-down meeting. See Amended Complaint 58-59.

Plaintiff was denied her quest to have her husband, or some observer present, and she was denied her request to tape record the meeting. Heitzman indicated he did not know why she had been sent to him, after she told him that she had no idea why she was ordered to meet with him. Heitzman assured her that she was all right, telling her, "you're not crazy", and admitting to her that she should have been told why she was asked to come and meet with him. Deb Rearick was told that she was not to return to work until summoned and that she needed to get an independent medical exam, meaning a mental or psychiatric exam. See Amended Complaint 60-63.

Plaintiff alleges she is being retaliated against for filing her most recent complaint and that the defendants are using her lawful and proper possession of a carry and conceal gun permit, conduct which is protected by the 2nd Amendment to the U.S. Constitution, as a way to harm and injure the plaintiff in violation of her 1st and 2nd Amendment rights.

## II.    QUESTIONS PRESENTED

SHOULD THE DOCRINE OF CLAIM PRECLUSION BAR PLAITNIFF'S CLAIMS AGAINST DEFENDANTS ACTIONS TAKEN IN SEPTEMBER 2009?

SHOULD ALL CLAIMS AGAINST DEFENDANTS SPANIER, HORVATH, DONCSECZ BE DISMISSED FOR FAILURE TO STATE A CLAIM?

SHOULD CLAIMS OF DEFENDANTS MATTERN, WIEDEMER AND MANEY BE DISMISSED FOR FAILURE TO STATE A CLAIM?

### SUGGESTED ANSWERS NO!

## III.    STANDARD OF REVIEW

"The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6) [is] required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [to Plaintiffs]. Moreover, in the event [the] complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend [the] complaint." *Phillips v. County of Allegheny*, 515 F.3d 244, 1-2 (Feb. 5, 2008) (internal citations omitted).

Further, "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of" the necessary element." *Id.* at 20 (internal citations omitted).

## IV.   ARGUMENT

### A.  CLAIM PRECLUSION DOES NOT APPLY.

At the outset, Plaintiff contends that on the face of the amended complaint in this matter, while the claims clearly arise out of plaintiff's employment with Penn State University, there is not sufficient identity of parties and identity of claims sufficient to meet that condition of the claim preclusion analysis.  The prior action was strictly a Title VII action that arose out of a past sexual harassment claim involving a different set of actors/witnesses, for the most part, and discrete acts of discrimination and retaliation that can, for all intents and purposes, be determined distinct from this lawsuit.  In fact, it was the filing of the prior lawsuit, by other counsel, that gave rise to the claims that are chiefly at issue in this case.  In addition, the witnesses/defendants in this case were not all necessarily even witnesses in the prior case, let alone personally involved in the wrongs against plaintiff, and there was a clear temporal disconnect between the two sets of events.  Moreover, the defendants argument that these claims are related belies the basis of their defense in the prior action that the connection between her adverse employment action and the prior discrimination was too temporally attenuated.  Under all the facts and circumstances, there is no commonality of issues or parties for purposes of claim preclusion.  *See Elkadrawy v. The Vanguard Group, Inc.*, 584 F.3d 169 (3d Cir. 2009).

In addition, this case can be resolved on the issue of whether the one discrete claim at issue – the Spring, 2009 non-selection – could have been brought in the first action.  Under the circumstances, it clearly could not have.  This court's holding in

*Morgan v. Covington Twp.*, No. 09-651, 2009 WL 3818431 (M.D. Pa. 2009) (relied upon and attached to defendants' brief) does not affect this result.  In *Morgan*, the plaintiff was terminated from his employment after the lawsuit was filed, and before even a case management order was entered, and there was no mention at any time that the termination claim was sought to be included in the case until the time of the final pretrial conference, which was denied.  A new case was filed and the first case proceeded to judgment, and this Court later granted a motion to dismiss based upon claim preclusion, finding that the latter claim could have been brought in the first case.  Presumably, the basis for the decision was that the termination of the plaintiff in January 2008 provided ample time for plaintiff in that case to amend and, more importantly, conduct discovery, on the issue of his termination.

The circumstances in the present case are considerably different than those before the Court in *Morgan*.  In the present case, the latter adverse employment action happened after there was a change in counsel and the case had been set down for a second case management schedule.  Thereafter, there were several continuances and even a stay of the proceedings due, in large part, to a serious medical concern of plaintiff's counsel.  Most significantly, however, and what sets this case apart from the *Morgan* analysis, is that plaintiff's counsel in this case did, in filings and in informal communications with the court to resolve disputes along the way, raise the issue of including the Spring, 2009 non-selection, and express her desire to add this claim to her case, and to conduct discovery related to those claims.  In fact, in a February 5, 2010 motion to enlarge discovery in the prior case, No. 08-1195 (doc. 38) (attached hereto as Exhibit A), and in other communications, plaintiff's counsel did, indeed, inform the Court that leave to amend

10

and to conduct discovery would be sought, but the Court indicated that such a motion would not be considered at the late stage of the proceedings and even a motion to enlarge the discovery deadline was denied, and then the case proceeded to be thrown out on summary judgment.  This is alleged right in the pleading at paragraphs 35 and 36.  Very simply, without the opportunity to conduct discovery, which was denied, there was no full and fair opportunity to litigate the claims, and no basis for the application of claim preclusion to any aspect in this case.

Clearly, the facts and circumstances of this case are much different than those in *Morgan*, and plaintiff in this case did exercise all reasonable diligence in notifying the parties and bringing all of her claims in one proceeding, and, as such, those claims cannot be precluded in this case.

B. **PLAINTIFF STATES CLAIMS AGAINST SPANIER, HORVATH AND DONCSEZ.**

Plaintiff does not dispute or disagree with the principle that an individual defendant in a civil rights action must be alleged to have individual involvement in the underlying violations in order for a claim to be stated against him or her.  *See Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005).  Unlike in *Evancho*, however, there is much more than some hypothecation of involvement of individuals, including the University President, in the adverse employment actions at issue.

The Amended Complaint at paragraphs  23-29 set forth the information and belief upon which the involvement of Spanier, Horvath, and Doncsecz are based.  Wiedemer and Mattern, who are known to work closely with Spanier and others in the administration offices, are clearly involved in the maters by defendants own admission.

Information and belief was not just alleged generally here in this case further tying Spanier, Horvath, and Doncsecz to the actual employment decision, but was supported with further evidence of customs, and practices at the University such that "old main" is commonly known to refer specifically to Spanier himself, and to his inner circle, which further involves Horvath and Doncsecz, who were all alleged to have had personal involvement or, as otherwise stated, knowledge of and acquiescence in, the adverse employment actions. *See Robinson v. City of Pittsburgh*, 120 F.3d 11286 (3d Cir. 1997). Further support for this pleading allegation comes from the fact that at the time of the adverse actions at issue, plaintiff's case against the University was still pending before the courts, and, in addition, plaintiff had sought an extension of discovery, and had even suggested amending her pleading to include Spanier, Horvath, and Doncsecz to her case.

The motion to dismiss standard of review requires only that the factual detail be enough to provide the defendant with enough notice as to the type of claim with which he or she is to be presented and to raise a reasonable expectation that discovery will reveal further evidence to support each element of the claim. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2009). Under all the facts and circumstances, there is clearly enough factual information pled in the amended complaint to put each of these defendants on notice of the claims against them, and, short of plaintiff having been given a document with their names on it or something along those lines, plaintiff has pled all the information that she can reasonably be expected to possess concerning the involvement of each of these individuals in her claims. Clearly, she has met the pleading standards relative to the level of individual involvement required, and defendants must be dismissed. The fact is that plaintiff will in all likelihood take the depositions of each of

these three individuals anyway, and, if appropriate, would likely let these individuals out of the case if they actually were not involved, and each of them are further protected by the summary judgment mechanism.

### C.  PLAINTIFF HAS SUFFICIENTLY PLED ALL HER CLAIMS.

The defendants argue in a catchall fashion, without recognizing the overall nature of plaintiff's pleading, and by excessively compartmentalizing and segregating facts and claims from other facts and claims to suit their devices.  As set forth above, plaintiff did indeed allege the personal involvement of all named defendants, and, at paragraphs 50 and 51 alleged generally that all of those defendants, whose conduct and involvement had been previously set forth, and acted though a course of conduct in retaliation for her filing of her prior lawsuit.  Plaintiff alleged with specific knowledge, information, and belief, the involvement and basis of the involvement of all of the individual defendants in her case, and the fact is that the separate discrete adverse employment actions, and other actions taken, were all taken in retaliation for her prior federal lawsuit.  This is what is alleged, it is alleged with sufficient factual specificity, and all of the defendants are on fair notice of what plaintiff's claims are and the grounds upon which they rest such that the motions to dismiss must be denied in all respects.

**IV. CONCLUSION**

For the foregoing reasons, and under the foregoing authorities, defendants'
motions to dismiss must be denied.


                             Respectfully Submitted,

By:          s/Don Bailey, Esquire
                  4311 N. 6th Street
                  Harrisburg, PA  17110
                  (717) 221-9500

14

**CERTIFICATION PURSUANT TO LOCAL RULE 7.8 (B) (2)**

I, Don Bailey do hereby certify that pursuant to L.R. 7.8(b) (2), the total word count of the foregoing Brief is 3866 which was determined by using the word count feature of the Microsoft Word program.


By: /s/Don Bailey, Esquire

## CERTIFICATE OF SERVICE

I, **Don Bailey** do hereby certify that on this 17TH DAY OF JUNE 2011 I served a true and correct copy of **Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss** upon the Defendant to the attorney listed below via **ECF:**

> JAMES M. HORNE ESQUIRE
> McQuaide Blasko
> 811 University Drive
> State College, PA 16801-6699

> Respectfully Submitted,

By:          s/Don Bailey, Esquire
                    4311 N. 6th Street
                    Harrisburg, PA  17110
                    (717) 221-9500

16