Westlaw.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Gene C. BENCKINI t/a Benckini Nurseries, Plaintiff
v.
UPPER SAUCON TOWNSHIP, et al., Defendants.

Civil Action No. 07-3580.
May 13, 2008.

### MEMORANDUM AND ORDER

GENE E.K. PRATTER, District Judge.

*1 *Pro se* Plaintiff Gene C. Benckini, a frequent litigant in this Court, has sued the Coopersburg Borough, Coopersburg Police Chief Daniel Trexler, Coopersburg Police Officers Jason Leidecker, William Nahrgang, and Charles Wyckoff, and Borough Manager Daniel Stonehouse (hereinafter "Coopersburg Defendants"). Mr. Benckini also brings suit against Upper Saucon Township, Upper Saucon Police Chief Robert Coyle, Upper Saucon Police Officers Brian Hawk, Stephen Kuebler, Amey Getz, Edward Hartman, Thomas J. Nicoletti, and Brian McLaughlin (hereinafter "Upper Saucon Defendants") as well as Andy Medellin, Scott Parry, and Leroy Oswald (hereinafter "Lehigh County Defendants") [FN1] and Lehigh County Assistant District Attorney Amanda Lovett. Viewing the Complaint most generously, Mr. Benckini alleges various civil rights violations under 42 U.S.C. § 1983. Presently before this Court are motions to dismiss by the Coopersburg Defendants, the Upper Saucon Defendants, and the Lehigh County Defendants and Ms. Lovett, to all of which Mr. Benckini has responded. The doctrine of *res judicata,* principle of absolute prosecutorial immunity, the applicable statute of limitations and various other legal doctrines mandate that most of the allegations in Mr. Benckini's Complaint be dismissed. Certain specific claims remain.

FN1. The exact professional position of these three defendants is not explained anywhere in the filings for this case, although Mr. Benckini does refer to "Lehigh Detective Leroy Oswald." Complaint ¶ 24. Lehigh County Assistant District Attorney Jeffrey Dimmig represents these defendants and Ms. Lovett, and it appears that Defendants Medellin, Parry and Oswald are employed by the Office of the Lehigh County Sheriff. However, the exact nature of their employment has no bearing on the outcome of their Motion to Dismiss.

### I. FACTUAL BACKGROUND

Mr. Benckini's Complaint chronicles chapters of his life dating back to 1980. He alleges actions taken by Defendants constituting a "(26) year history of malice, malicious slander and abuse of illegal and bogus criminal charges and arrests against the plaintiff for blowing the whistle on their illegal malfunctioning and illegality." Complaint ¶ 7. Mr. Benckini alleges that Upper Saucon Township illegally discharged pollutants from its sewage treatment plant onto his property in 1980, and because he reported "their sewage plant violations and pollution of fresh water streams," Upper Saucon Township, Coopersburg Borough and the other Defendants have retaliated against Mr. Benckini through the decades. *Id.* ¶ ¶ 8-10. He avers that Coopersburg Police Chief Trexler formed a conspiracy with the other Defendants to "get rid of plaintiff starting on October 20, 1999 on through March 8, 200[sic], March 9, 2000, June 15, 2001, September 27, 200[sic] and October 12, 2001." Plaintiff further states that "[a]ll of these bogus charges were manifested by Police Officer Daniel Trexler." *Id.* 1113.

Mr. Benckini also claims that the Coopersburg Police Department (hereinafter "CPD") covered up and refused to investigate a hit and run accident that Mr. Benckini alleges he witnessed in 1999. *Id.* ¶¶ 12-14. Mr. Benckini alleges that he was falsely

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

arrested in June 2001 for a forgery charge relating to a fake CPD notice. *Id.* ¶ 25.

Mr. Benckini further alleges that his home was illegally searched by the CPD and the Lehigh County Defendants in February 2005. *Id.* ¶ 35. He claims that Detective Oswald returned to his home a week later and took his typewriter without presenting a warrant. *Id.* 1136. He alleges that he was falsely arrested in September 2005 based on this "illegal search and seizure" and "manufactured evidence." *Id.* 1138.

**\*2** Mr. Benckini makes several claims against the Upper Saucon Police Department ("USPD") as well. He asserts that the USPD failed to investigate the 2004 thefts of large trees from his nursery business. *Id.* ¶ ¶ 43-45. He also claims that in 2006 US-PD officers prevented him from accessing the land he leased for his nursery business, prohibited him from removing trees and nursery equipment from the site, and threatened to arrest him if he did not follow the officers' orders. *Id.* ¶ ¶ 46-53. Mr. Benckini asserts that USPD officers forced him to remove his equipment from a neighbor's land, falsely claiming that the land owner had asked the officers to do so. *Id.* ¶ 54. Mr. Benckini claims that after he left the land, an officer followed him to his church and cited him for having a burned out tail light on his truck, even though all the vehicle's lights were in working order. *Id.* ¶ 54.

Mr. Benckini also claims that in May 2006 after he filed a second statement regarding the 1999 accident, he again was falsely arrested. *Id.* ¶ ¶ 16-18. Mr. Benckini asserts that a CPD officer then interfered with jury selection in his December 2006 trial by shouting that Mr. Benckini was guilty. *Id.* ¶ 56. [FN2] Further, he claims that Assistant District Attorney Amanda Lovett suppressed evidence during the trial and "prevented and deprived" Mr. Benckini of the opportunity to fully explain his position during trial by interrupting Mr. Benckini's testimony, moving exhibits out of his line of sight, and regularly objecting to defense testimony and evidence. *Id.* ¶ 58.[FN3] Further, USPD officers

presented false testimony and evidence during the trial with the assistance of Ms. Lovett. *Id.* ¶ ¶ 58-59. Finally, Mr. Benckini alleges that during his May 2007 sentencing hearing, the Ms. Lovett "presented false and manufactured evidence claiming that the plaintiff has (3) probation violation[s]" when, in fact, he had only one such violation. *Id.* ¶ 60.

> FN2. Mr. Benckini acknowledges that the jurors who heard the alleged statement were dismissed from jury service in his case. Complaint ¶ 56.

> FN3. Although Mr. Benckini does not sue Deputy District Attorney Matthew Weintraub in this action, Mr. Benckini mentions seeing Mr. Weintraub in a courthouse in October 2006 and accuses the prosecutor of cursing at him. Complaint ¶ 57. In two prior cases Mr. Benckini has filed complaints against Mr. Weintraub, and the Court has dismissed all such claims against Mr. Weintraub on the basis of prosecutorial immunity. *See, Benckini v. Ford,* No. 05-1417, 2005 U.S. Dist. LEXIS 11883, 2005 WL 1427688 (E.D. Pa. June 16, 2005); *Benckini v. Coopersburg Borough,* No. 05-5122, 2006 U.S. Dist. LEXIS 60885 (E.D.Pa. August 18, 2006).

In two prior cases in this District, Mr. Benckini also filed complaints against some of these same Defendants. One complaint against the Coopersburg Borough, the Coopersburg Police Department, Police Chief Daniel Trexler, and the Mayor of Coopersburg was dismissed by way of summary judgment as a result of Mr. Benckini's failure to offer any evidence against the Defendants. *See, Benckini v. Coopersburg Police Dept.* No. 03-3671, 2004 U.S. Dist. LEXIS 14663, at * 19, 2004 WL 1686954 (E.D.Pa. July 27, 2004) ( *"Benckini I"* ). That case involved a "drama between Plaintiff Gene Benckini and Defendants which began on October 20, 1999 and has culminated in [the No. 03-3671 suit before Judge Schiller.]" *Id.* at *2.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

Without a doubt that suit was a civil rights action under 42 U.S.C. § 1983.

Many of the incidents alleged as the basis for the claims in *Benckini I* occurred on the same days and include the same individuals as many of the incidents alleged in the instant action, in which Mr. Benckini alleges a widespread conspiracy among law enforcement officers from multiple organizations "starting on Oct, [sic] 20, 1999 on through Mar. 8, 2000, Mar. 9, 2000, June 15, 2001, Sept, [sic] 27, 200[sic] and Oct. 12, 2001." Complaint ¶ 13. These same incidents were also the basis for claims that Mr. Benckini made against the Coopersburg Borough, Deputy District Attorney Matthew Weintraub, Coopersburg Police Chief Daniel Trexler, the Coopersburg Mayor, and Police Officers Herb Hevener, Joseph Hetten, Jason Leidecker, Jeffery Tapler, William Nahrgang, and Matt Hinkel in a case still pending before this Court (No. 05-5122) ( *"Benckini II"* ). In *Benckini II*, this Court dismissed under the doctrine of res *judicata*, the doctrine of prosecutorial immunity, and the relevant statute of limitations many of the same claims previously dismissed by the Court in *Benckini I* that are again being raised by Mr. Benckini in this third action. *See,* 2006 U.S. Dist. LEXIS 60885 (E.D.Pa. August 18, 2006).

## II. DISCUSSION

### A. The Legal Standard

**\*3** The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Therefore, the Court must accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn from the pleading. *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). The Court is not, however, required to accept legal conclusions either alleged or inferred from the pleaded facts. *Kost,* 1 F.3d at 183. Nonetheless, a court may dismiss a complaint only if the plaintiff can prove

no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Understandably, courts must liberally construe complaints drafted by *pro se* plaintiffs such as is Mr. Benckini. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Urrutia v. Harrisburg County Police Dep't,* 91 F.3d 451, 456 (3d Cir.1996).

### B. Res Judicata

Both the Coopersburg Defendants and the Upper Saucon Defendants refer to the results in Mr. Benckini's prior cases and argue that many of his claims are barred by the doctrine of *res judicata.* Res *judicata* "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action." *Williams v. City of Allentown,* 25 F.Supp.2d 599, 602 (E.D.Pa.1998) (citing *Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 189 (3d Cir.1993)). In order to successfully invoke res *judicata,* a party must show that "there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984). "All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost." *Williams,* 25 F.Supp.2d at 602 (citing 18 James Wm. Moore et al., Moore's Federal Practice § 131.01 (3d ed.1998)). "It is well established that a grant of summary judgment is a final adjudication ." *Williams,* 25 F.Supp.2d at 602; *see also Freedman v. American Export Isbrandtsen Lines, Inc.,* 451 F.2d 157, 158 (3d Cir.1971) (holding that a dismissal of the first action with prejudice is a complete adjudication of the issues presented by the pleadings and bars further action between the parties). A comparison of the allegations in Mr. Benckini's Complaint here with the earlier decisions in *Benckini I* and *Benckini II* establishes that all of the requirements for *res judicata* are met for certain claims at issue in the instant action.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

Page 4

As recounted above, Mr. Benckini alleges instances of police misconduct between October 1999 and October 2001, all allegedly "manifested by Police Chief Daniel Trexler." Complaint ¶ 13. Mr. Benckini further alleges that on February 8, 2005 CPD Officers Jason Leidecker, William Nahrgang, and Charles Wyckoff, a K-9 officer identified as "Grim," and Lehigh County Detectives Leroy Oswald, Andy Medellin and Scott Parry conducted an illegal search and seizure of his home resulting in his arrest on September 1, 2005, and, further, resulting in his conviction for forgery and other related charges on December 15, 2006. *Id.* ¶¶ 35-38. Throughout the Complaint, Mr. Benckini alleges misconduct by the Coopersburg Defendants occurring between May 20, 1980 and December 11, 2006.

*4 While *res judicata* prohibits reexamination of matters actually decided in a prior case, as well as those that the parties might have, but did not, assert in a prior action, *Williams,* 25 F.Supp.2d at 602, the doctrine also applies when two suits are the same except for the addition in the second suit of defendants closely related to defendants in the prior suit. See *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3d Cir.1972) ( *"res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants"). In the present action, Mr. Benckini has asserted claims against defendants from prior suits as well as new defendants who also are law enforcement and other public service employees alleged to have taken part in the same activities that gave rise to Mr. Benckini's prior suits.

In August 2006, the Court found that Mr. Benckini's claims in *Benckini II* against the Coopersburg Defendants (except for claims involving his arrests on June 20, 2005 and September 1, 2005, the first of which is not at issue in this case) had been dismissed by Judge Schiller in *Benckini I* by entry of summary judgment. Accordingly, this Court again dismissed those claims. *See, Benckini II,* 2006 U.S. Dist. LEXIS 60885, at *12-17. In this present action, Mr. Benckini again sues Coopersburg Borough, Chief Trexler, and Officers Leidecker and Nahrgang for the many of the same alleged constitutional violations. However, now Mr. Benckini also has sued Officer Wyckoff and Borough Manager Daniel Stonehouse as well as the Upper Saucon Defendants, the Lehigh County Defendants and Ms. Lovett.

Allegations of civil rights violations made in Mr. Benckini's Complaint against Chief Trexler for false arrest, malicious prosecution and conspiracy to violate constitutional rights on June 15, 2001, September 27, 2001, and October 12, 2001 were dismissed by Judge Schiller in the 2003 case. *Benckini I,* 2004 U.S. Dist. LEXIS 14663, at *9-16, 2004 WL 1686954. These same incidents also form the basis for the claims that Mr. Benckini made against Coopersburg Borough, *et al.* in *Benckini II* that the Court dismissed based on the doctrine of *res judicata. Benckini II,* 2006 U.S. Dist. LEXIS 60885, at *12-16. Once again, in the instant case, these same incidents reappear as a basis for Mr. Benckini's pre-2006 claims against the Coopersburg Defendants. Complaint ¶ 13. Because the Court has dismissed these claims twice before, they surely cannot rise from the ashes here against the Defendants who were also named in the earlier actions, namely, Coopersburg Borough, Chief Trexler, and Officers Leidecker and Nahrgang.

Mr. Benckini also asserts these same claims against law enforcement officers not named in *Benckini I* or *Benckini II*. These allegations involve actions allegedly taken by law enforcement officers working together and in identity of interest with the defendants from *Benckini I* and *Benckini II,* and, thus, Mr. Benckini certainly could have sued the newly named defendants in the prior actions, *Benckini I* and *Benckini II.* Accordingly, the doctrine of res *judicata* bars Mr. Benckini from asserting the claims from *Benckini I* or *Benckini II* against *any* defendant in the present action.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

**\*5** Further, many of the events in Mr. Benckini's Complaint pre-date the filing of Mr. Benckini's Complaint in *Benckini II* on September 27, 2005. Therefore, Mr. Benckini could have alleged those claims in the earlier case. [FN4] Each one of Mr. Benckini's allegations identified above that involves an incident occurring prior to the filing of his complaint in *Benckini II* in September 2005 is related to the alleged "(26) year history of malice, malicious slander and abuse of illegal and bogus criminal charges and arrests against the plaintiff." Complaint ¶ 8. Inasmuch as Coopersburg Borough, Chief Trexler, and Officers Leidecker and Nahrgang were named in the prior § 1983 suit before this Court (*Benckini II* ) and the fact that that suit was based on the same alleged police misconduct by defendants in identity of interest with the parties being sued today, Mr. Benckini could very well have brought the pre-September 27, 2005 claims in his prior suit and, thus, is precluded by the doctrine of *res judicata* from asserting those claims against any defendant in the present action.

> FN4. Also, as noted in the memorandum and order dismissing for the same reasons a vast majority of the claims in *Benckini II*, most of these allegations pre-date even Mr. Benckini's filing of his *Benckini I* and, thus, were barred by the doctrine of *res judicata* from being asserted even in *Benckini II*. *See, Benckini II*, 2006 U.S. Dist. LEXIS 60885, at \*16.

The only misconduct Mr. Benckini alleges against the Coopersburg Defendants that arguably could escape the application of *res judicata* is that which allegedly occurred after September 27, 2005. Mr. Benckini alleges that Chief Trexler lied under oath during a preliminary hearing on September 28, 2005. Complaint ¶ 25. Accordingly, this alleged conduct has not been previously reviewed by this Court, and *res judicata* does not bar Mr. Benckini's claim against Chief Trexler in that regard.

The second event of misconduct Mr. Benckini alleges to have occurred after September 27, 2005

is related to his May 9, 2006 arrest. *See,* Complaint ¶¶ 15-16. However, on January 10, 2007, this Court denied with prejudice Mr. Benckini's motion to amend his 2005 Complaint to include constitutional claims related to the May 9, 2006 arrest. *See,* January 10, 2007 Order, Civil Action No. 05-5122 (Doc. No. 20). As part of the basis for the ruling, the Court noted that Mr. Benckini had waited to file his motion to amend for nearly five months after the alleged events took place and nearly one year after the defendants filed a motion to dismiss. He had also failed to raise those events or claims in his response to the motion to dismiss, which response he filed only one month after the alleged events took place. *Id.*

Although the Third Circuit Court of Appeals has not addressed this particular issue, other circuit courts of appeals repeatedly have held that the "denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." *Professional Management Associates, Inc. v. KPMG LLP,* 345 F.3d 1030, 1031 (8th Cir.2003). *See also, King v. Hoover Group, Inc.,* 958 F.2d 219, 223 (8th Cir.1992) ("denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading"); *Witthohn v. Fed. Ins. Co.,* 164 Fed. Appx. 395, 397-98 (4th Cir.2006) (holding the same). The doctrine of *res judicata* applies regardless whether or not the denial of leave to amend a pleading was based on the merits. *Northern Assur. Co. of Am. v. Square D Co.,* 201 F.3d 84, 88 (2nd Cir.2000) (explaining that such a holding is justified because "the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit."). *See also, Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir.1982) (citing Restatement (Second) of Judgments § 25, comment b (1982) ("[I]t is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

alleged in the complaint and an application to amend the complaint came too late.")). The prior ruling suffices to foreclose the proposed claim, and Mr. Benckini cannot circumvent this Court's prior orders in an effort to assert previously dismissed claims by instituting yet another lawsuit against a slightly different group of interrelated defendants.

*6 Accordingly, on the basis of the doctrine of *res judicata*, the Court will dismiss all claims against the Coopersburg Defendants except the claim against Chief Trexler for alleged perjury during Mr. Benckini's September 28, 2005 preliminary hearing in criminal case number 3729-2005.[FN5] The Court also will dismiss claims against all Defendants for any alleged events that occurred before September 27, 2005.

> FN5. Although this claim cannot be dismissed under the doctrine of *res judicata*, the Court will dismiss it for other reasons. *See, infra* § II.F (dismissing this claim under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

**C. Statute of Limitations**
In their Motion to Dismiss, the Coopersburg Defendants argue that aside from being barred by the doctrine of *res judicata*, the majority of Mr. Benckini's claims are barred by virtue of the applicable statute of limitations. The statute of limitations can be asserted in a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if noncompliance clearly appears on the face of the Complaint. *Clark v. Sears Roebuck Co.,* 816 F.Supp. 1064, 1067 (E.D.Pa.1993). The statute of limitations for Mr. Benckini's 42 U.S.C. § 1983 claims is Pennsylvania's two year statute of limitations for personal injury actions. *See, Wilson v. Garcia,* 471 U.S. 261, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); 42 Pa.C.S. § 5524. *See also, Debiec v. Cabot Corp.,* 352 F.3d 117, 128 (3d Cir.2003) (noting that Pennsylvania has a two year statute of limitations for personal injury and wrongful death actions).[FN6]

> FN6. The statute of limitations in Pennsylvania for a slander action is one year. 42 Pa.C.S. § 5523(1). Mr. Benckini alleges "malicious slander" in paragraph 7 of his Complaint but provides no details as to which defendants allegedly slandered him or when. Even interpreted most generously, no allegations in the Complaint could form the basis of a slander claim, particularly one that would survive the one year statute of limitations.

Even though Pennsylvania law controls the applicable statute of limitations, federal law determines when a cause of action under § 1983 accrues. *Elliott, Reihner, Siedzikowski and Egan, P.C. v. The Pennsylvania Employees Benefit Trust Fund,* 161 F.Supp.2d 413, 420 (E.D.Pa.2001). A § 1983 claim accrues on the date the plaintiff knew or had reason to know of the injury which is the basis for his action. *De Botton v. Marple Township,* 689 F.Supp. 477, 480 (E.D.Pa.1988). More generally, a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong. *See, Oschiver v. Levin, Fishbine, Sedran & Berman,* 38 F.3d 1380, 1386 (3d Cir.1994).

The Complaint in this matter was filed on August 28, 2007, but Mr. Benckini alleges police misconduct dating back to 1999, well beyond the two-year limitations period. The Complaint presents or even hints at no excuse or explanation that could conceivably justify any tolling of the limitations period or would otherwise support any result other than preclusion for untimeliness. Therefore, all but the claims relating to events alleged to have occurred after August 28, 2005 are time-barred against all Defendants.

**D. Absolute Prosecutorial Immunity: The Allegations Against Amanda Lovett**
Ms. Lovett, who prosecuted Mr. Benckini, argues that she is immune from suit on the strength of the doctrine of absolute prosecutorial immunity. Mr. Benckini's allegations against Ms. Lovett relate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

only to actions she allegedly took during his December 2006 criminal trial and the resulting May 18, 2007 sentencing hearing. *See,* Complaint ¶¶ 56, 58-60.

*7 The United States Supreme Court has held that a prosecutor enjoys absolute immunity from liability for civil damages for actions related to the prosecution of a criminal case. *Imbler v. Pachtman,* 424 U.S. 409, 422-24, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Prosecutors are entitled to absolute immunity from suit for all acts "within the scope of [their] duties in initiating and pursuing a criminal prosecution." *Id.* at 410. Furthermore, absolute immunity shields prosecutors from § 1983 civil liability for acts associated with their function as advocates. *Imbler,* 424 U.S. at 429. Even if the prosecutor's malicious or dishonest acts deprive a wronged defendant of liberty, that defendant is without any civil redress against the prosecutor. *Id.* at 427.

Because each claim against Ms. Lovett alleged by Mr. Benckini stems solely from actions taken by Ms. Lovett in the performance of her duties as a prosecutor, Ms. Lovett is immune from any liability for the claims made against her in the instant suit. Therefore, all of Mr. Benckini's claims against Ms. Lovett will be dismissed.

**E. Nursery-Related 2006 Claims against Upper Saucon Defendants**
Mr. Benckini asserts that during 2006, USPD officers repeatedly denied him access to the land he leased for his nursery business. *See,* Complaint ¶¶ 46-55. On January 12, 2006, Officers Hawk and Getz told Mr. Benckini that he was trespassing on Lloyd Lichtenwalner's land and had to leave. Mr. Benckini showed him a document he asserted was his lease for the property, but the officers forced him to leave anyway. *Id.* ¶ 46. When Mr. Benckini returned to the property on March 1, 2006, Officers Hawk and Kuebler told him that he had no legal document allowing him permission to enter the property and, thus, had to leave. *Id.* ¶ 47. Mr. Benckini acquired a document from his landlord's

attorney on May 22, 2006 granting him permission to enter the land to remove his personal property. *Id.* ¶ 48. That same day, Officers Hawk, Kuebler, and Hartman told Mr. Benckini that he still was restricted from entering the property and, thus, needed to unload the trees from his truck and leave the area. *Id.* ¶ 49. On June 25, 2006, Officer Getz told Mr. Benckini to remove his trailer and loader from a neighbor's property. Mr. Benckini asserts that he had permission to use the neighbor's land, but the officer told him that he was unlawfully trespassing. When Mr. Benckini sought permission to contact the neighbor, Officers Hawk and Kuebler told him to leave the property immediately. Mr. Benckini alleges that "[t]he officers got right in the plaintiff's face and Officer Brian Hawk pushed the plaintiff back." *Id.* ¶ 54.

After Mr. Benckini left the property on June 25, 2006, he drove to his church to park his equipment. He asserts that Officer Hawk followed him to the church and gave him a ticket for having a burned out taillight on his truck. Mr. Benckini avers that his taillight was in working order. *Id.* Mr. Benckini endeavors to articulate a number of claims from this factual chapter.

**i. Fourth Amendment Claims**
*8 Mr. Benckini claims that his interactions with the police relating to his entry onto the Lichtenwalner property as recounted immediately above constitute breaches of his Fourth Amendment right to be free from unlawful seizures of his person.

**a. Interactions with Officers Regarding the Property**
The Upper Saucon Defendants argue that Mr. Benckini's claims for his encounters with police officers in spring and summer 2006 did not constitute seizures as a matter of law. They assert that while Mr. Benckini describes numerous interactions with police officers regarding his presence on land owned by other individuals and his attempts to remove trees and other items from such land, Mr. Benckini admits that at all times he was free to leave the property, and, in fact, was encouraged to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

leave. Upper Saucon Defendants' Motion to Dismiss at 16. *See, e.g.,* Complaint ¶ 46 ("Officer Hawk said your [sic] not wanted here so load up and leave, your [sic] trespassing.").

"[N]ot every encounter between the police and a citizen constitutes a seizure within the meaning of the Fourth Amendment." *U.S. v. Williams,* 413 F.3d 347, 352 (3d Cir.2005). "[T]he Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority." *Id.* However, a submission to police authority necessarily entails a restriction of movement. "A seizure occurs whenever an officer restrains the freedom of a person to walk away." *Curley v. Klem,* 298 F.3d 271, 279 (3d Cir.2002) (quotation and citation omitted).

Mr. Benckini never alleged in his Complaint that during spring and summer 2006 the Upper Saucon Defendants *prevented* him from leaving the property he leased for his nursery (or any other property). Instead, he detailed in his Complaint how the officers repeatedly instructed him to leave the disputed land. Accordingly, Mr. Benckini may not pursue a Fourth Amendment claim for interactions with USPD officers that took place at the nursery property and on neighboring land.

**b. Traffic Stop**

Mr. Benckini also alleges that on June 25, 2006, Officer Hawk followed him to his church parking lot, asked Mr. Benckini what he was doing at the church, and issued Mr. Benckini a traffic citation for a burned out taillight. Complaint ¶ 54. Mr. Benckini asserts that at the time his taillight was in working order. *Id.* "The temporary detention of individuals during an automobile stop by the police, even if only for a brief period, constitutes a seizure within the meaning of the Fourth Amendment. Therefore, an automobile stop is subject to the Constitutional requirement that the seizure not be 'unreasonable' under the circumstances." *Litzenberger v. Vanim,* No. 01-5454, 2002 U.S. Dist. LEXIS 13843, 2002 WL 1759370 (E.D.Pa. July 31,

2002) (citing *Whren v. U.S.,* 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Here, when read in the very most generous light, Mr. Benckini's Complaint alleges that there was no cause, other than harassment, for Officer Hawk to prevent his vehicle from leaving the church and citing him for a burned out taillight. As the Court reads the Upper Saucon Defendants' motion to dismiss, it appears that they do not acknowledge or challenge Mr. Benckini's Fourth Amendment claim for the June 25, 2006 traffic stop and citation. Accordingly, this claim is not subject to the motion to dismiss.[FN7]

> FN7. If the Court has failed to see where the Upper Saucon Defendants challenge Mr. Benckini's claim for the violation of his Fourth Amendment rights during the June 25, 2006 traffic stop and citation, the Upper Saucon Defendants may so inform the Court by way of a motion for reconsideration within ten days of the date of this Memorandum and Order.

**c. Excessive Force**

*9 Mr. Benckini claims that on June 25, 2006 when the USPD officers were forcing him from the land where he ran his nursery, Officers Hawk and Kuebler "got right in the plaintiff's face and Officer Brian Hawk pushed the plaintiff back and said, 'man your [sic] looking to get yourself hurt.' " Complaint ¶ 54.

The use of excessive force can constitute an unlawful "seizure" under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Carswell v. Borough of Homestead,* 381 F.3d 235, 240 (3d Cir.2004). Before deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

396.

Again, when afforded a generous interpretation, Mr. Benckini's Complaint can be read to set forth a claim for excessive force in paragraph 54 emanating from the face-to-face altercation. As the Court reads the Upper Saucon Defendants' motion to dismiss, it appears that they do not acknowledge or challenge Mr. Benckini's claim for excessive force, so this claim appears not to be a subject of the motion to dismiss.[FN8]

> FN8. Once again, if the Court has failed to see where the Upper Saucon Defendants challenge Mr. Benckini's claim for excessive force, the Upper Saucon Defendants may so inform the Court by way of a motion for reconsideration within ten days of the date of this Memorandum and Order.

**ii. Fourteenth Amendment Claims**

Mr. Benckini also claims that his encounters with USPD officers in spring and summer 2006 violated his Fourteenth Amendment rights. He seems to assert that the police violated his right to due process and equal protection by performing inadequate investigations of the various disputes between Mr. Benckini, his landlord and his neighbor over control and access to land on which his nursery was situated. *See,* Complaint ¶¶ 46-55. Mr. Benckini repeatedly asserts that officers failed to consider the purported legal documents Mr. Benckini possessed which allegedly granted him access to the disputed lands. *See, e.g.,* Complaint ¶ 46 (alleging that officers refused to consider a lease agreement extending Mr. Benckini's nursery lease for three years); *id.* ¶ 49 (asserting that USPD officers forced Mr. Benckini to leave the land even after he showed them a written document from Mr. Lichtenwalner's attorney granting Mr. Benckini access to the disputed land). As the Upper Saucon Defendants note, "[i]t is apparent from his pleadings that plaintiff would prefer that a civil dispute with his landlord and neighbors be settled in a different fashion." Upper Saucon Defendants' Motion to Dismiss at 18.

**a. Due Process**

Mr. Benckini seems to assert that the Upper Saucon Defendants denied him access to the land he leased from Mr. Lichtenwalner and to a neighboring parcel in violation of his due process rights. In order "to prevail on substantive and procedural due process claims, plaintiffs must have been deprived of a property interest because of either arbitrary and capricious government action or a denial of fair legal process." *Taylor Inv., Ltd. v. Upper Darby Twp.,* 983 F.2d 1285, 1290 (3d Cir.1993) (citation omitted). To evaluate such a claim, the Court must consider whether the asserted individual interest is included in the Fourteenth Amendment's protection of life, liberty or property, and, if so, whether Mr. Benckini was denied the due process of law to protect his property rights. *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000).

*10 Mr. Benckini cannot claim protection for land he neither owns nor leases because he has no property interest in such land, and, thus, he cannot assert a due process violation in relation to USPD officers preventing him from remaining on property neighboring Mr. Lichtenwalner's property. However, in Pennsylvania, both tenants and landlord have Fourteenth Amendment property interests. *Lozano v. City of Hazelton,* 496 F.Supp.2d 477, 538 (M.D.Pa.2007). Mr. Benckini asserts that without process, USPD officers repeatedly prevented him from entering land for which he held a lease that was valid for an additional three years. Complaint ¶ 46 (claiming that Mr. Benckini had a lease agreement extending his lease until November 23, 2009). Because the Court must accept the facts as pleaded, the Court will not dismiss Mr. Benckini's claims for due process violations resulting from USPD Officers Hawk, Getz, Kuebler and Hartman allegedly interfering with his property rights as described in the Complaint. The parties will be left to appropriate discovery in order to more fully discuss this claim.

**b. Equal Protection**

Mr. Benckini also advances a Fourteenth

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

Page 10

Amendment equal protection claim. To support an equal protection claim, Mr. Benckini needs to do more than simply allege sub-standard police procedures. Rather, a plaintiff must allege a state action that "burdens a fundamental interest or hinges upon a suspect or quasi-suspect criterion." *Perkins v. Philadelphia,* 766 F.Supp. 313, 316 (E.D.Pa.1991). Absent this,"courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. *Vance v. Bradley,* 440 U.S. 93, 96-97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

The claims Mr. Benckini asserts do not trigger any heightened judicial scrutiny because they do not assert the burdening of a fundamental interest or hinge upon a suspect or quasi-suspect class. Mr. Benckini does not allege that he is a member of any protected class. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432,440 (1985). Mr. Benckini seems to raise a "class of one" equal protection claim. *See, Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). To state a claim under such a theory, a plaintiff must allege that "he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008). Mr. Benckini does not allege that he was subjected to treatment different from other similarly situated individuals. Rather, he simply alleges his dislike of the USPD's handling of the disputed property situation. Accordingly, the Court will dismiss his equal protection claim.

**F. Claims Relating to Mr. Benckini's 2005 Preliminary Hearing and 2006 Trial**

Mr. Benckini asserts a variety of allegedly inappropriate actions by the various defendants in this case as related to his September 28, 2005 preliminary hearing and his December 2006 trial. *See,* Complaint ¶¶ 25, 56-59. He alleges that CPD Chief Trexler, Officer Nahrgang, and "other defendants" formed a conspiracy to manufacture evidence

against him and to commit perjury, *id.* ¶ 22; that Chief Trexler and Officer McLaughlin perjured themselves while testifying during Mr. Benckini's preliminary hearing in Commonwealth criminal case number 3941-2005, *id.* ¶ 25, 27; that USPD Chief Coyle, Officer Nicoletti and Ms. Lovett conspired to tamper with the jury selection process during Mr. Benckini's December 2006 criminal trial, *id.* ¶ 56; that Officer McLaughlin and Detective Oswald withheld evidence and encouraged witnesses to perjure themselves during the trial, *id.* ¶ 24; that Ms. Lovett and Detective Oswald had various secret and inappropriate discussions during the course of Mr. Benckini's criminal trial, *id.* ¶ 58; and that Detective Oswald presented to the trial judge without Mr. Benckini being present "false and manufactured statements" regarding Mr. Benckini's alleged danger to the community in order to encourage the judge to revoke Mr. Benckini's bail, *id.* ¶ 59.[FN9] Throughout his Complaint, Mr. Benckini also makes vague allegations about defendant law enforcement officers manufacturing evidence for one criminal prosecution or another. However, Mr. Benckini acknowledges that he was convicted and sentenced for the crimes at issue. *See, id.* ¶¶ 58, 60. *See also,* Plaintiff's Opposition to Defendants Coopersburg Borough's Motion to Dismiss at 4 ("Sure the plaintiff was convicted of the counts 1, 2, 4, 5, in case no. 3729/2005 and count (1) in case no. 2240/2006....") He nowhere alleges that his convictions have been reversed, expunged or otherwise declared invalid. In short, he has been found guilty in these actions.

FN9. In this section, the Court does not include allegations made against only Ms. Lovett because all such claims are barred under the doctrine of prosecutorial immunity and, thus, do not require additional analysis. *See, supra* § II.D.

**\*11** The Supreme Court has held that a plaintiff may not rely on § 1983 to make a collateral attack on valid criminal convictions. Specifically, the Supreme Court held:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
(Cite as: 2008 WL 2050825 (E.D.Pa.))

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (footnote omitted). A court considering a defense challenge under *Heck* must determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487; *see also, Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir.2007) (noting that the second element of a malicious prosecution claim that must be pleaded is that the criminal proceeding ended in the plaintiff's favor).

Mr. Benckini's claims related to his 2005 preliminary hearing and the resulting 2006 trial challenge the process through which he was convicted for the underlying crimes.[FN10] He alleges that the existence of a conspiracy by many of the named defendants motivated by animus toward him due to his alleged "whistle blowing" led to improper investigations and prosecutions culminating in his criminal convictions. He asserts that Defendants perjured themselves repeatedly during his preliminary hearing[FN11] and prosecution, presented manufactured evidence and generally interfered with his right to a fair trial. All § 1983 claims related to the trial process as described in the Complaint (with the exception of that which is described immediately below) are barred because a finding in Mr. Benckini's favor would "necessarily imply the in-

validity of his conviction or sentence." *Heck,* 512 U.S. at 487.

> FN10. Mr. Benckini does not specify which causes of actions allegedly arise from his preliminary hearing, trial and sentencing, but viewing the Complaint here in the most favorable manner, the Court recognizes claims under § 1983 for retaliatory prosecution, malicious prosecution, manufacturing evidence, and suppressing exculpatory evidence. All such claims directly affect the validity of Mr. Benckini's related convictions.

> FN11. Even if the claims related to alleged perjury during Mr. Benckini's preliminary hearing were not barred under *Heck,* such claims are barred because of the absolute immunity to witnesses, including police officers, charged under § 1983 for alleged perjurous testimony at pretrial proceedings. *See, Williams v. Hepting,* 844 F.2d 138, 142 (3d Cir.1988) ("Witnesses at trial are afforded absolute immunity to encourage complete disclosure in judicial proceedings.")

However, Mr. Benckini makes one trial-related claim that must survive dismissal: his claim related to *ex parte* communications between Detective Oswald and the trial judge. Mr. Benckini asserts that Detective "Oswald presented false and manufactured statements, verbally by the plaintiff's witnesses in his reports, claiming all of defense witnesses were afraid of the plaintiff for fear of their lifes [sic], stateing [sic] that the plaintiff was going to kill people if they didn't testify for him. This information was presented to the judge William Platt." Complaint ¶ 59. When drawing from the Complaint all inferences most favorable to Mr. Benckini, the Complaint suggests that the allegedly false information presented to the judge when Mr. Benckini was not present led directly to the revocation of Mr. Benckini's bail and his pre-sentencing incarceration. Because a successful challenge under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

§ 1983 would not affect the validity of Mr. Benckini's underlying conviction, *Heck* does not bar this due process claim against Detective Oswald although *Heck* bars all other claims related to Mr. Benckini's 2005 preliminary hearing and 2006 trial.

**G. Additional Claims**

**i. Sixth Amendment Claims**

*\*12* In Count One of his Complaint, Mr. Benckini references "a violation of Sixth Amendment rights." Complaint ¶ 64. However, in the Complaint, he does not elaborate on exactly which of his interactions with the various Defendants allegedly violated a Sixth Amendment right.

The Sixth Amendment guarantees the right to a speedy trial, the right to be informed of the nature and cause of accusation, the right to be confronted by witnesses against one, the right to have a compulsory process for obtaining witnesses in one's favor, and the right to assistance of counsel in one's defense. U.S. Const. amend. VI. A person's Sixth Amendment rights, made applicable to the states through the Fourteenth Amendment, do not attach until adversary judicial proceedings have been brought against an individual. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)

Although the Commonwealth has initiated criminal proceedings against Mr. Benckini on several occasions during the past decades, Mr. Benckini admits that in each instance he was represented by counsel, had the opportunity to call witness, and was ultimately unsuccessful in defending his criminal prosecutions. While he claims in paragraph 58 that *his attorney* lied about subpoenaing witnesses, nowhere does Mr. Benckini assert that any of the many named defendants in this litigation interfered with any of his Sixth Amendment rights. *See,* Complaint ¶ 58. Accordingly, the Court will dismiss Mr. Benckini's Sixth Amendment claims.

**ii. Claims Against Upper Saucon Township and**

**Coopersburg Borough**

Mr. Benckini has asserted *Monell* claims against Defendant Upper Saucon Township and Defendant Coopersburg Borough. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "the Supreme Court held that § 1983 may give rise to municipal liability when a constitutional violation occurs as a result of a policy, regulation, or decision officially adopted by the municipality or informally adopted by custom." *Benckini v. Coopersburg Police Department,* 2004 U.S. Dist. LEXIS 14663, at *18, 2004 WL 1686954 (citing *Monell*). However, the mere existence of an unlawful policy or custom is not enough to support liability. A plaintiff must demonstrate that the municipal policy or "practice was the proximate cause of his injury." *Id.* (citing *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990)).

Mr. Benckini has failed to plead that the policies or training of Upper Saucon Township or Coopersburg Borough resulted in the violation of his constitutional rights. Because *respondeat superior* is not a basis for municipal liability under § 1983, the Court will dismiss all claims against the Upper Saucon Township and Coopersburg Borough. *A.M. v. Luzerne County Juvenile Det. Ctr.,* 372 F.3d 572, 580 (3d Cir.2004) ("A governmental entity ... cannot be liable under a theory of respondeat superior or vicarious liability.")

**III. CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the Upper Saucon Defendants' Motion and the Lehigh County Defendants' Motion. The Court will grant the Coopersburg Defendants' motion as to the dismissal of claims against the Coopersburg Defendants, but deny the motion as to limiting Mr. Benckini's ability to pursue future litigation in this Court without first obtaining leave of the Court. An appropriate Order consistent with this Memorandum follows.

***ORDER***

*\*13* AND NOW, this May 13, 2008, upon consideration of the Lehigh County Defendants and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)
**(Cite as: 2008 WL 2050825 (E.D.Pa.))**

Ms. Lovett's Motion to Dismiss (Doc. No. 12), the Upper Saucon Defendants' Motion to Dismiss (Doc. No. 13), the Coopersburg Defendants' Motion to Dismiss (Doc. No. 14), Mr. Benckini's Responses thereto (Doc. Nos.23, 27, 29), and the Coopersburg Defendants' Reply (Doc. No. 26), IT IS HEREBY ORDERED that:

1. The Lehigh County Defendants and Ms. Lovett's Motion (Doc. No. 12) IS GRANTED IN PART AND DENIED IN PART. All claims against Ms. Lovett, Andy Medellin, and Scott Parry are DISMISSED. The Motion is denied as to the 42 U.S.C. § 1983 claim against Leroy Oswald for violations of due process rights during Mr. Benckini's December 2006 trial. Leroy Oswald shall file his answer to the remaining claim within twenty (20) days of the date of this Order.

2. The Upper Saucon Defendants' Motion (Doc. No. 13) is GRANTED IN PART AND DENIED IN PART. All claims against Upper Saucon Township, Robert Coyle, Thomas J. Nicoletti and Brian McLaughlin are DISMISSED. The Motion is denied as to the 42 U.S.C. § 1983 claims for violations of due process rights in 2006. The remaining Upper Saucon Defendants shall file their answer to the remaining claims within twenty (20) days of the date of this Order.

3. The Coopersburg Defendants' Motion (Doc. No. 14) is GRANTED IN PART AND DENIED IN PART. All claims against the Coopersburg Defendants are DISMISSED with prejudice. The Court WILL NOT preclude Mr. Benckini from bringing any future actions against the Coopersburg Defendants without prior leave of Court.

E.D.Pa.,2008.
Benckini v. Upper Saucon Tp.
Not Reported in F.Supp.2d, 2008 WL 2050825 (E.D.Pa.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.