**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DEBORAH REARICK,

Plaintiff,

GRAHAM SPANIER, et al.

Defendants.

CIVIL ACTION NO. 4:11-CV-624

(JUDGE CAPUTO)

**MEMORANDUM**

Currently before the Court are two motions to dismiss Plaintiff's Second Amended Complaint brought by two different groups of Defendants.[1] (Docs. 36 and 47.) As in her First Amended Complaint, Plaintiff Deborah Rearick alleges retaliation by the Defendants in violation of her First Amendment right to petition and a violation of her Second Amendment right to bear arms. In her Second Amended Complaint, however, Rearick has added additional Defendants and additional claims under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). In their motions to dismiss, the Defendants argue: (1) that these additional claims and parties should be dismissed for failure to follow the Federal Rules of Civil Procedure and the Local Rules; (2) that Rearick has failed to state a plausible retaliation claim for her protected actions under either the First or Second Amendment; and (3) that Rearick has failed to state a plausible retaliation claim based on Title VII and/or the PHRA. The Court will grant the Defendants' motions to

[1]Specifically, the remaining Defendants filed their Motion to Dismiss on December 29, 2011 requesting that the Court dismiss the Second Amended Complaint in its entirety, including the claims made against the newly-added Defendants. (Doc. 36.) On March 5, 2012, these newly-added Defendants filed their own motion to dismiss, raising exactly the same arguments as contained within the previous Motion. (Doc. 47.)

dismiss as Rearick has again failed to exhibit the public concern necessary for a First Amendment retaliation claim and has also failed to plead a violation of the Second Amendment. Further, Rearick's Title VII and PHRA claim will be dismissed for failing to properly seek leave to amend. Rearick will be given leave to amend solely as to her claim under the Second Amendment.

## I. BACKGROUND

Deborah Rearick alleges the following. Rearick is an employee of the Pennsylvania State University ("PSU"). Defendants Susan J. Wiedemer, Joseph Doncsecz, and Al Horvath are trustees for PSU, and Jon Nirnberger is PSU's Human Resources Director. All four are "members of an inside group of top level 'front office' officials . . . euphemistically described along with the President of the University as "Old Maine" [sic] meaning, more specifically, the Office of the President of the University, Graham Spainer." (Second Am. Compl. at ¶ 7.) At all relevant times, Graham Spanier was President of PSU and "is commonly known, referred to, or described as 'Old Maine' [sic] himself." (*Id.* at ¶ 8.) James Mattern is the Director of Research Accounting for PSU, Defendant Wendell Courtney is an attorney for PSU, and Defendant Richard Killian was Rearick's supervisor.[2] Finally, the Second Amended Complaint also names PSU as a Defendant.

In 1999, Rearick's former supervisor, who is not named as a Defendant in this matter, circulated an e-mail to coworkers containing a sexually explicit image of a young girl. Rearick had been previously badgered by her supervisor for sex, and had "made known her unhappiness and disgust with this harassment." (*Id.* at ¶ 10.) Rearick took the email to

---

[2]Robert Maney, a putative Defendant who has been omitted from the caption in this matter, is also believed to be Rearick's supervisor.

PSU's Affirmative Action Office. However, instead of initiating a sexual harassment claim, that office sent Rearick to Jon Nirnberger, who is also known to be a confidant of President Graham Spainer.

Rearick's 1999 complaint triggered years of retaliation which have led to the instant action. In fact, Rearick filed numerous unspecified complaints against PSU, the named Defendants, and others, which resulted in retaliation "as part of the pervasive culture of cover-up and intimidation which pervades the managerial atmosphere and actions of the Pennsylvania State University." (*Id.* at ¶ 30.) This retaliation has come in the form of denied promotional opportunities, mental evaluations, threats, and suspensions. Specifically, in 2006, Plaintiff was injured through receiving an unduly negative performance evaluation.

Although President Spanier communicated to Rearick and other staffers in 2008 that it would be inappropriate for PSU staff to go outside the University with their problems, Rearick brought her initial lawsuit against PSU on June 24, 2008, alleging retaliation for her prior sexual harassment complaints and breach of contract. *Rearick v. Pennsylvania State University*, No. 1:08-cv-1195 (M.D Pa. 2008). Summary judgment was entered in favor of the University, and the Third Circuit affirmed that judgment on March 4, 2011. *Rearick v. Pennsylvania State University*, 416 Fed.Appx. 223 (3d Cir. 2011). While that action was pending before the district court, Rearick was acting as an Accountant I at PSU, and she bid for permanent appointment to the position as she "had a clear inside track for the appointment." (Second Am. Compl. at ¶ 47, Doc. 35.) Although Rearick was told she had performed well in the interview, she was ultimately denied the position. She was told that "Old Main made the decision," and that "Old Main has the power," meaning that President

Spainer–in conjunction with Defendants Wiedemer, Horvath and Doncsecz–had personally decided to reject Rearick, who was the most qualified candidate. (*Id.* at ¶¶ 55, 59.) Further, Defendant Killian told Rearick that she was denied for her "reoccurring pattern of questioning authority." (*Id.* at ¶ 60.) As such, this denial was an act of retaliation for Rearick's filing suit in federal court, as well as lodging complaints with the Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission.

In May of 2010, and while Rearick's original matter was still pending in the district court, she was again denied an opportunity for promotion. When she applied for a position as Assistant Supervisor of the Property Inventory Department, this position was given to a less qualified employee, also in retaliation for Rearick's seeking redress of grievances. Moreover, while her original action was on appeal to the Third Circuit, Rearick applied for a position of Grants and Contract Accountant I. She was also denied this position, being told that it was because she lacked a college degree. Again, however, the real reason for the denial was retaliation.

In October of 2010, Defendant Wiedemer sent a false and baseless letter to Rearick directing that she cease dragging her coworkers into her legal issues. In a further act of retaliation, while her Third Circuit appeal was pending, Defendant Wiedemer placed in Rearick's file an old e-mail from 2007 casting her in a negative light. That e-mail, from Defendant Courtney, similarly warned Rearick "not to harass other university employees in any manner." (*Id.* at ¶ 80.)

On May 5, 2011, Rearick was ordered to attend a meeting with Defendants Maney and Wiedemer where she was asked to turn over her keys, was questioned about her conceal-and-carry firearms permit, and was eventually sent to meet with a PSU in-house

mental counselor. Rearick was told not to return to work until summoned, and appears to still be on leave. These were all further acts of retaliation.

In her Second Amended Complaint, Rearick claims that all of the Defendants have participated in retaliating against her in violation the First Amendment's Petition Clause (Count I). Further, she alleges that Defendants Maney and Wiedemer–in questioning her about her gun permit–violated her rights under both the First and Second Amendments (Count II). Additionally, Plaintiff brings a claim against PSU under Title VII and the PHRA for retaliation for filing complaints of sexual harassment and discrimination (Count III).

On October 14, 2011, I granted Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 25.) However, in doing so, I relied heavily on the Supreme Court's decision in *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011), which had been decided after Rearick filed her Amended Complaint. Therefore, I granted Rearick's Motion for Reconsideration "insofar as it request[ed] leave to submit an amended complaint on her First Amendment Petition Clause claims." *Rearick v. Spainer*, Civ. Act. No. 4:11-cv-624, 2011 WL 5920713, at *1 (M.D. Pa. Nov. 28, 2011). Rearick filed her Second Amended Complaint on December 19, 2011. On December 29, 2011, the Defendants remaining from the First Amended Complaint filed their Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 36.) Later, on March 5, 2012, the Defendants who had been added in the Second Amended Complaint filed their own Motion to Dismiss (Doc. 47), reiterating the same arguments raised in the December 29 Motion. The Defendants' motions have been fully briefed and are now ripe for the Court's review.[3]

---

[3]Contrary to Plaintiff's assertion, the Court notes that the Defendants' January 12, 2012 brief did comply with Middle District Local Rule 7.8 as it does not exceed 5000 words

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.*

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the

---

and contains a Certificate of Word Count.

complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**B. Plaintiff's First Amendment Claim (Count I)**

As in her First Amended Complaint, Rearick's revised Complaint does not properly allege the public concern necessary to support a First Amendment retaliation claim.

To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) [s]he engaged in constitutionally protected conduct, (2) [s]he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citation omitted). *Borough of Duryea v. Guarnieri* extended this analysis to actions brought under the First Amendment's Petition Clause, holding that "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." 131 S. Ct. 2488, 2500 (2011). However, if such an employee petitions "as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs." *Id.* As an initial matter, whether such public concern exists is "a question of law to be determined by examining 'the content, form, and context of a given statement, as revealed by the whole record.'" *Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1988) (citation omitted); *see also Connick v. Myers*, 461 U.S. 138, 148 (1983).

Courts routinely find an absence of public concern where public employees level personal complaints against their employers. This is because "[a] public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (citation omitted). Mere employee grievances do not rise to the necessary

level–"absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Guarnieri*, 131 S. Ct. at 2501.

In my October 14, 2011 Order, I determined that Rearick's Second Amended Complaint "did not 'seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Rearick v. Spainer*, Civ. Act. No. 4:11-cv-624, 2011 WL 4905517, at *5 (M.D. Pa. Oct. 14, 2011) (citing *Guarnieri*, 131 S. Ct. at 2501)). In other words, I found that Rearick had not spoken out on a matter of public concern, but instead had complained about a purely personal employment dispute. Plaintiff's Second Amended Complaint contains an array of new facts that explicitly seek to echo the overall social concerns currently surrounding PSU. This is in an attempt to show that "Deborah Rearick . . . like numerous other victims has suffered the abusive effects of political influence, and all the trappings of power that have enabled numerous defendants to abuse their positions at [PSU], particularly the employment of a pattern of conduct where everything is covered up and swept under the rug . . . ." (Pl.'s Br. at 18, Doc. 43.) However, for the reasons below, Rearick has still failed to establish that she petitioned on a matter of public concern.

**1. Plaintiff's 2008 Lawsuit as a Matter of Public Concern**

To the extent Rearick alleges retaliatory conduct stemming from the filing of her 2008

lawsuit, the determination that this lawsuit was not a matter of public concern will remain undisturbed. Though more detailed than before, the thrust of Rearick's Second Amended Complaint is substantially the same as her First Amended Complaint: "Between the filing of her original complaint on June 24, 2008 and the Third Circuit Court of Appeals decision on March 4, 2011 the plaintiff was unlawfully denied a number of promotional opportunities in retaliation for her suing the Pennsylvania State University by the above named defendants." (Second Am. Compl. at 2, Doc. 35.) That earlier lawsuit, however, complained solely of personal retaliation and contract claims based on prior complaints made against her employer and expressed no larger social concern. While it may well be true that Rearick was retaliated against as a result of bringing that suit, it cannot be the case that a wholly personal lawsuit, not championing any broader social purpose, could be construed as a matter of public concern sufficient to meet this test. *See e.g. Miles v. City of Philadelphia* (*Miles I*), Civ. Act. No. 11-4040, 2011 WL 4389601, at *4 (E.D. Pa. Sept. 21, 2011) (holding that while allegations of sexual harassment could suffice as a public concern for a Petition Clause claim, that the plaintiff's complaint should be dismissed for failing to meet this requirement as her particular "allegations, viewed in the light most favorable to her, pertain[ed] only to conduct directed towards plaintiff and were made to advance only her own interests."). Therefore, Rearick's 2008 lawsuit is not a matter of public concern necessary to support her First Amendment retaliation claim.

**2. Plaintiff's Complaint with PSU's Affirmative Action Office as a Matter of Public Concern**

As above, Rearick also does not sufficiently allege that her complaint with PSU's Affirmative Action Office ("AAO") was made with any broader social purpose. In my

previous Order, I held that this filing with the AAO was not a matter of public concern because it was a completely internal petition, containing even less inherent potential to constitute as a matter of public concern. *See Guarnieri*, 131 S. Ct. at 2501 ("[I]nternal grievance procedure[s] in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context."). In her Second Amended Complaint, Rearick attempts to bolster her claim of larger social concern by introducing details about a sexually-explicit email she reported to the AAO in 1999 and the legal conclusion that "[i]t is a matter of public concern the pornographic pictures of unwitting an [sic] innocent young girls are circulated among the top leadership of [PSU]." (Second Am. Compl. at ¶ 36, Doc. 35.) Of course, Rearick "must provide more than a 'formulaic recitation' that she spoke out on a matter of public concern and her '[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Miles I*, 2011 WL 4389601, at * 4 (quoting *Twombly,* 550 U.S. at 555). Yet, as a matter of law, Rearick's internal complaint, where there is no averment that it contemporaneously sought to further a larger public interest or pertained to parties other than herself, cannot suffice as a matter of public concern.[4] In fact, Rearick specifically concludes that her AAO report should have been processed as a sexual harassment claim, which is an action for personal redress and

---

[4]Plaintiff also claims that she "filed a number of complaints against the University and certain individuals . . . . [who] retaliated against her . . . as part of the pervasive culture of cover-up and intimidation which pervades the managerial atmosphere and actions of the Pennsylvania State University." (Second Am. Compl. at ¶ 30, Doc. 35.) There is no further elaboration on these allegations, and it is therefore not possible to determine that they sought to further a greater public concern or pertained to third parties. As these events are not alleged with particularity, nor with sufficient facts to substantiate that they were constitutionally protected conduct, they are disregarded for the purpose of this analysis.

does not counsel a finding of larger public concern. *See e.g. Bell v. City of Phila.*, 275 Fed.Appx. 157, 159 (3d Cir. 2008) (finding no public concern where a complaint "sought not to expose discriminatory or harassing practices or policies at the DA's Office, but complained solely about plaintiff's own 'abuse' and mistreatment by superiors and co-workers . . . especially given that they arose only after plaintiff's discipline for his own workplace infractions and amid clear evidence of his insubordination."); *Miles v. City of Philadelphia* (*Miles II*), Civ. Act. No. 11-4040, 2012 WL 525737, at *4 (E.D. Pa. Feb. 17, 2012) (dismissing plaintiff's claim on the public concern element where it did "not implicate defendants in a pattern of conduct directed at anyone other than her."); *Middleton v. Deblasis*, Civ. Act. No. 11-cv-4124-JD, --- F.Supp.2d ----, 2011 WL 6934095, at *4 (E.D. Pa. Dec. 30, 2011) (dismissing plaintiff's complaint for lack of public concern where she complained only of her own abuse and mistreatment); *McCartney v. Penn. State Police*, No. 09–CV–1817, 2011 WL 3418381, at *31 (M.D. Pa. Mar. 9, 2011) (finding no public concern for where "[n]othing in the [underlying] complaint intimated a wider pattern of inappropriate conduct), *report and recommendation adopted by* No. 09–CV–1817, 2011 WL 3293283 (M.D. Pa. Jul. 29, 2011); *Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 318 (S.D.N.Y. 2009) (finding no matter of public concern where the underlying "complaints consist mostly of a recitation of many instances of alleged hostility or mistreatment directed at [plaintiff] personally, and which apparently affected only [plaintiff].").

Rearick's attempt to upset this analysis by introducing more salacious details into her Second Amended Complaint does not automatically transform her actions into a matter of public concern. In particular, Rearick attempts to bolster her claims by concluding that the "recent events at Penn State unequivocally demonstrate" the existence of a public concern.

(Second Am. Compl. at ¶ 35, Doc. 35.) Even assuming this to be true, these recent media events have no relation to Rearick and they cannot be used retroactively expand the scope of Rearick's earlier complaints. Thus, while the public may now be interested in some of the things Rearick complained of, it is not properly alleged that Rearick spoke with a public purpose. Therefore, as there is nothing in Rearick's Second Amended Complaint alleging that her complaints were made with any larger social purpose, Plaintiff has failed to plead a matter of public concern and her First Amendment retaliation claim fails.

The Third Circuit has instructed that if a complaint is vulnerable to 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Since Rearick has already been afforded an opportunity to amend on this particular infirmity, further amendment would be futile and I will dismiss this claim with prejudice.

**C. First and Second Amendment Violations on May 5, 2011 (Count II)**

The adverse actions surrounding Rearick's May 5, 2011 meeting with Defendants Maney and Wiedemer are insufficient to support claims under either the First or Second Amendment.

First, to the extent Rearick seeks to establish a First Amendment retaliation claim on these alleged harms, her claim will be dismissed. The retaliation alleged in Count II is explicitly predicated on Rearick's original Complaint, which, as explained above in Part B, cannot support such a claim. Therefore, Rearick's First Amendment retaliation claim in Count II will also be dismissed with prejudice.

Secondly, Rearick does not raise a cognizable Second Amendment claim in her

Second Amended Complaint. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). This is a "right to keep and bear arms that is not conditioned on service in a militia." *United States v. Barton*, 633 F.3d 168, 170 (3d Cir. 2011) (citing *Heller*, 554 U.S. at 595). Though unclear, Rearick appears to allege that the Defendants violated her Second Amendment Rights as a way to punish her for exercising her First Amendment petition clause rights, that the Defendants allegedly used her "gun permit . . . as a way to harm and injure the plaintiff in violation of her 1st Amendment petition clause rights." (Second Am. Compl. at ¶ 93, Doc. 35.) Yet, in the instant matter, Plaintiff alleges no facts whereby her Second Amendment rights were harmed or injured. Instead, it merely alleges that Defendants Maney and Wiedemer "questioned [her] about a gun permit (conceal and carry) that she has had for many many years, for protection due to business activities." (*Id.* at ¶ 86.) Specifically, there are no facts suggesting that her right to possess or carry weapons was impinged in any way, and this claim must be dismissed. However, leave to amend on this claim is not necessarily futile, and it is noted that the Defendants did not object to this claim as stated in Rearick's First Amended Complaint.[5] Of course, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Therefore, I will afford

[5] In her First Amended Complaint, the Court construed Rearick's Second Amendment claim as a Second Amendment retaliation claim–meaning that she was allegedly punished for exercising her Second Amendment rights. Conversely, Rearick's Second Amended Complaint appears to present a Second Amendment violation as only a means to retaliate against her for attempting to exercise her First Amendment rights.

Rearick an opportunity to amend her claim once again, but solely as to her claim under the Second Amendment.

### D. Plaintiff's Title VII and PHRA Claim (Count III)

In her Second Amended Complaint, Plaintiff Deborah Rearick has added three new parties: the Pennsylvania State University, Jon Nirnberger, and Wendell Courtney. Plaintiff has also added additional claims under Title VII and the PHRA.

In my November 23, 2011 Order, I granted Rearick's Motion to Reconsider "insofar as it request[ed] leave to submit an amended complaint on her First Amendment Petition Clause claims." *Rearick v. Spainer*, Civ. Act. No. 4:11-cv-624, 2011 WL 5920713, at *1 (M.D. Pa. Nov. 28, 2011). This determination recognized that the law had changed in the Third Circuit as to petition clause claims since the filing of Rearick's Amended Complaint. *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2500 (2011) ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases.").

Federal Rule of Civil Procedure Rule 15 provides that "a party may amend its pleading *only* with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added). While a "court should freely give leave when justice so requires," *id.*, no such leave was ever requested in this action. Instead, Plaintiff's Motion to Reconsider specifically requested, in pertinent part, that the Court "permit the plaintiff to amend the amended complaint to address the District Court's interpretation of what connotes, in light of *Guarnieri* and related law, a 'matter of public concern' and, or, reinstate plaintiff's petition clause claim for properly alleging a 1st Amendment petition clause claim for violations of her 1st Amendment right to petition." (Mot. Reconsider at ¶ 3, Doc. 29.)

Plaintiff never requested, and I never granted, leave to submit an entirely different claim. As such, these new claims are not properly before the Court.

Plaintiff's argues that the judicial economy is not served by "forcing the plaintiff, for any reason, to resubmit the Second Amended Complaint as a new complaint since it is already before the court[,] has already been reviewed by defense counsel, and is up for review." (Pl.'s Br. At 16, Doc. 43.) This argument is not persuasive. Rule 15, while encouraging amendment, is designed to further judicial economy by vetting proposed amended complaints for instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182 (1962). To argue that it is more economical for a court to ignore a violation of this rule is absurd, as it would encourage others to violate the rule with the same rationalization, leading to less judicial economy overall and a complete evisceration of the rule. Moreover, Plaintiff's argument that the statute of limitations has not run for this issue actually supports dismissing these claims since dismissal will not unduly prejudice Rearick's claims. Therefore, I will dismiss Rearick's claim as to Title VII and the PHRA.

Finally, because Rearick's First Amendment retaliation claims will be dismissed, it is not necessary to address her attachment of additional parties to that claim.

**III. CONCLUSION**

Plaintiff's First Amendment retaliation claims will be dismissed for failing to plead a matter of public concern. Her Second Amendment claim will also be dismissed for failure to state a claim, but leave to amend will be granted as to that claim alone. Finally, Plaintiff's

new claims under Title VII and the PHRA will be dismissed for failure to seek leave to amend on those causes of action. An appropriate order follows.

April 30, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge